IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,                Criminal No. 0315 3:19 CR00031-001

v.

WILLIAM M. JONES, IV,

Defendant

## POSITION OF DEFENDANT WITH RESPECT TO SENTENCING FACTORS PURSUANT TO FED. R. CRIM. P. 32(f) and §6A1.2(b) of the U.S.S.G.

AND NOW, comes the Defendant, William M. Jones, IV, by and through his counsel, Terry L. Graffius, Esquire, of Leventry, Haschak & Rodkey, LLC, and files the within Position of Defendant with Respect to Sentencing Factors Pursuant to Fed. R. Crim. P. 32(f) and §6A1.2(b) of the U.S.S.G., and in support thereof, avers as follows:

## INTRODUCTION

William M. Jones, IV is a fifty-one (51) year old male who lived in Stoystown, Pennsylvania, with his wife Ching Mei Jones, who is a native from Taiwan. Mr. Jones was employed as an Operations Manager at Augustine Dye and Mold at the time of his arrest, after obtaining a Master's Degree in Manufacturing Management from Penn State University in State College, Pennsylvania. Mr. Jones owns three (3) rental properties as well in Oil City, Pennsylvania.

Mr. Jones was born in Texas and, as a result of his father being employed by the Air Force, his family relocated to Florida when he was four (4) years of age. Mr. Jones's parents, William M. Jones, III, and Carol Ridle, were divorced when he was six (6) years old and his mother remarried when Mr. Jones was nine (9) years old. Mr. Jones's first stepfather, Bob Rafilli, was an alcoholic who forced him and his twelve (12) year old stepsister to watch pornography and engage in sexual acts together. Mr. Jones's mother never knew that Mr. Rafilli was committing sexual abuse against her son. When Mr. Jones was ten (10) years old, his mother divorced Mr. Rafilli and then married

Richard Miller three (3) years later.  Mr. Jones never developed a good relationship with Mr. Miller and never had a good male role model in his life since his father was not in his life growing up and Mr. Rafilli had sexually abused him and his stepsister.

In 1990, at the age of twenty-two (22), Mr. Jones married Wendy Jones and they had two (2) children together, but they separated two (2) years later and subsequently divorced.  In 1998, Mr. Jones relocated to the State of Indiana where he began a relationship with Laney Hughes.  Mr. Jones and Ms. Hughes had a son together, Christopher, and Ms. Hughes had a daughter, Erica Hughes, from a previous relationship.  It was at this time that Mr. Jones was charged and convicted for fondling and touching Erica in a sexual manner when she was fourteen (14) years old.  Mr. Jones was sentenced to a period of incarceration for eight (8) years in Indiana State Prison.  Upon his release from prison, Mr. Jones relocated to Meadville, Pennsylvania, and then he later married his current wife, Ching Mei in 2010.

On or about March 18, 2020, Mr. Jones entered into a plea agreement in which he agreed to plead guilty to Counts Two (2) and Three (3) of the Indictment, Possession of Child Pornography and Felon in Possession of a Firearm, in exchange for the United States Attorney withdrawing Count One (1), Receipt of Child Pornography.  Mr. Jones did, in fact, plead guilty to Counts Two (2) and Three (3) on that day.  Mr. Jones's plea demonstrates that he understands the seriousness of the crimes for which he is charged and that he accepts responsibility for his conduct.  Mr. Jones understands that possessing child pornography is not a victimless crime and that possessing the images were, in fact, harming children by creating a market for their abuse.

The Defense requests that the Court exercise its discretion and grant a downward variance form the Sentencing Guidelines advisory range.  Mr. Jones has been a productive member of society his entire life, despite his past behavior involving sexual abuse.  When Mr. Jones was incarcerated seventeen (17) years ago, he voluntarily entered into sex offender therapy and completed therapy in

prison.   He continued his therapy after his release from prison by enrolling into the C.A.R.T.

Program at Parkside Psychological Associates in Meadville, Pennsylvania, and continued in therapy

thereafter.   The possession of child pornography in 2017 was a setback and relapse in his recovery,

but Mr. Jones accepted responsibility of his actions and continued with this therapy to this day,

while incarcerated in the Cambria County Prison.   Therefore, Mr. Jones asks this Honorable Court

to exercise its discretion in fashioning a sentence for his conduct, which takes his history and

personal struggle into consideration.   In light of Mr. Jones's otherwise outstanding character and

production within his community, his age and the character letters attached to this Sentencing

Memorandum submitted on his behalf, William M. Jones, IV, by way of this Memorandum

respectfully requests that this Honorable Court sentence him to only his mandatory sentence as

required by statute.

## SENTENCING CONSIDERATIONS:

**Step 1:**          In accordance with the plea agreement, the Sentencing Guideline range for William

Jones, IV, is one hundred and thirty-five (135) to one hundred and sixty-eight (168) months of

incarceration with a mandatory ten (10) year (120 months) minimum sentence as a result of his

previous conviction.   The Guideline range is based upon Mr. Jones having a criminal history

category of (3) and total offense level of 32 as calculated as follows:

## COUNT TWO:

| | |
|---|---|
| Base offense level for 18 U.S.C. §2252(a)(4)(B) | 18 |
| Specific offense characteristics in that the material possessed involved a pre-pubescent minor or a minor who had not obtained the age of twelve (12) years | +2 |
| Specific offense characteristics in that the material possessed involved material that portrays sadistic or masochistic conduct | +4 |
| Specific offense characteristics in that Defendant engaged in a pattern of activity involving abuse | +5 |

of a minor child

| | |
|---|---|
| Specific offense characteristics in that the offense involved the use of a computer for the possession of the material with the intent to view the material | +2 |
| Specific offense characteristics in that the offense involved more than three hundred (300) but less than six hundred (600) images | +4 |
| Total offense level | 35 |

## COUNT THREE:

| | |
|---|---|
| Base offense level for 18 U.S.C. §922(g)(1) | 14 |

## Multiple Count Adjustment:

| Count | Adjusted Offense Level | Units |
|---|---|---|
| Two (2) | 35 | 1 |
| Three (3) | 14 | 0 |
| Total Units | | 1 |

| | |
|---|---|
| Greater of the adjusted offense levels | 35 |
| Total acceptance of responsibility | -3 |
| Total Offense Level | 32 |

The applicable guideline range is in Zone D of the Sentencing Table.  Under the Guidelines, the punishment for an offense level that falls within Zone D shall be satisfied by a sentence of imprisonment.   Defendant, by statute, must serve a minimum sentence of ten (10) years of incarceration.

**Step 2:**        A Sentencing Court may depart from the Guidelines if justified by the overall nature of relevant circumstances or factors, even where particular facts in isolation may not warrant such departure.  Unites States v. Evans, 49 F 3rd 109, 114 (3rd Cir. 1995).  See also U.S.S.G. 5K.2(a)(1)(B).

4

The Sentencing Judge has discretion in all cases because his firsthand knowledge of the particular case provides unique insight into the intricacies of the case that no blanket Guideline provision could address. Kimbrough v. U.S., 552 U.S. 85, 108, 128 S Ct. 558, 169l L. Ed 2nd 481 (2007).

Mr. Jones moves for a downward departure to hundred and twenty (120) months of incarceration based upon Sections 5K2.0(a)(1)(B) of the United States Guidelines relating to departures based upon aggravated or mitigating circumstances of a kind not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that, in order to advance to the objectives as set forth in 18 U.S.C. §3553(b)(2)(A)(ii), should result in a sentence different from that described.

Pursuant to 5K 2.0(b), the Sentencing Court may impose a sentence below the range established by applicable Guidelines in child crimes or sexual offenses only if the Court finds that there exists a mitigating circumstance of the kind or to a degree, that (1) has been affirmatively and specifically identified as a permissible ground for departure in the Sentencing Guidelines taking into account any amendments to said Sentencing Guidelines or policy statements by an act of Congress, (2) has not adequately been taken into consideration by the Sentencing Commission in formulating the Guidelines and (3) should result in a sentence different from that described.

Pursuant to 5K 2.22, age may be a reason to depart downward to the extent permitted by 5H 1.1. Mr. Jones will be fifty-one (51) years of age at the time of the sentence and will be sixty-one (61) years of age after he serves his ten (10) year minimum sentence which is mandated by statute. That only leaves Mr. Jones with a minimum number of years to re-enter the workforce at the age of sixty-one (61) to provide some type of retirement income for both himself and his wife who is unemployed. The defense submits that age is certainly a valid ground for departure under the Guidelines to give Mr. Jones an extra fifteen (15) months of employment since he will not have

many years of employment after he completes his mandatory ten (10) year sentence due to his advanced age.

**Step 3:**        **Consideration of the Section 3553(a) Factors**

The United States Supreme Court summarized the governing law for the process of sentencing in <u>Pepper v. United States</u>, 131 S. Ct. 1229, 562 U.S. 476 (2011). In <u>Pepper</u>, the Supreme Court emphasized the extraordinary discretion of the Sentencing Judge to craft a sentence within or well outside the Guideline range, in accordance with the statutory requirements of 18 U.S.C. §3553(a). The holding in <u>Pepper</u> suggests that the Sentencing Guidelines calculation should be a "starting point" and an "initial benchmark" in a §3553(a) analysis. Accordingly, we discuss the appropriate application of the Guidelines herein below and why a downward variance upon applications of the factors set forth in §3553(a) is appropriate.

In determining a sentence, all that is required is that a Court give meaningful consideration to the §3553(a) factors and that those factors were "reasonably applied to the circumstances of the case". <u>United States v. Cooper</u>, 437 F 3rd 324, 329 (3rd Circ. 2006). "[S]entencing Courts have historically been afforded wide latitude in considering a Defendant's background at sentencing." <u>United States v. Berry</u>, 553 F. 3rd 273, 279 (3rd Cir. 2009) citing <u>United States v. Paulino</u>, 996 F. 2d 1541, 1547 (3rd Cir. 1993). Pursuant to 18 U.S.C. §3661, "**no limitation** shall be placed on the information concerning the background, character, and conduct of [the Defendant] which a Court of the United States may receive and consider for the purpose of imposing an appropriate sentence". (**emphasis added**)

As a practical matter, this statutory language trumps the now advisory policy statements in Chapter 5, Part H of the Sentencing Guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the Defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth and virtually any

6

other facts that fit within the ambit of §3553(a). In Gall, the Court rejected any requirement of the showing of "extraordinary circumstances" to justify a sentence below the Guidelines range as "not consistent with our remedial opinion in United States v. Booker." Gall at 564. Requiring "extraordinary circumstances" to justify a below Guidelines sentence would impermissibly elevate the Guidelines above the other factors articulated in 18 U.S.C. §3553. Id at 594.

"It has been uniform and constant in the Federal judicial tradition for the Sentencing Judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime the punishment to ensue." Pepper, 131 S Ct. at 1239-40; Koon v. United States, 518 U.S. 81, 113, 116 S Ct. 2035, 135 L. Ed. 2nd 392(1996). Underlining this tradition is the principal that "the punishment should fit the offender and not merely the crime". Id at 1240; See also Pennsylvania ex rel. Sullivan v. Ash, 302 U.S. 51, 55, 58 S Ct. 59, 82 L. Ed. 43(1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account, the circumstances of the offense together with the character and propensities of the offender").

> The Sentencing Commission, moreover, expressly incorporated § 3661 in the Guidelines:
>
> In determining the sentence to impose within the Guideline range, or whether a departure of the Guidelines is warranted, the Court may consider, without limitation, any information concerning the background, character and conduct of the Defendant, unless otherwise prohibited by law. USSG §1B1.4 (2010).

The opinion in Booker invalidating 18 U.S.C. §3553(b)(1) and §3742(e), instructed the District Courts to treat Guidelines as "effectively advisory". Booker at 245, 125 S Ct. 738. Under Booker, Sentencing Courts were advised to treat the Guidelines as just one (1) of a number of sentencing factors set forth in 18 U.S.C. §3553(a). Accordingly, a sentence is now deemed legal if it is "reasonable". 543 U.S. at 260.

7

Post-<u>Booker</u> opinions make it clear that, although a Sentencing Court must "give respectful consideration to the Guidelines, <u>Booker</u> permits the Court to tailor the sentence in light or other statutory concerns as well". <u>Kimbrough v. United States</u>, 552 U.S. 85, 101, 128 S Ct. 558, 169 L. Ed 2nd 481 (2007) (internal quotation marks and citations omitted). Accordingly, although "Guidelines should be the starting point and the initial benchmark," District Courts may impose sentences within statutory limits based on appropriate consideration of all factors listed in §3553(a) subject to appellate review for "reasonableness". <u>Gall v. United States</u>, 552 U.S. 38 at 49-51 (2007).

Following <u>Booker</u>, the District Court must impose a sentence in accordance with the factors set forth in 18 U.S.C. §3553(a), of which the "advisory United States Sentencing Guidelines are one (1) factor to consider". <u>Cooper</u>, 437 F 3rd 324 (3rd Circ. 2006). The District Court must give meaningful consideration to all of the §3553 sentencing factors and state on the record logical reasons for this sentence that are consistent with those factors. <u>Id</u>. §3553(a) begins with the broad mandate that Sentencing Courts "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this sub-section to achieve the proper protective, deterrent, punitive and rehabilitative purpose of criminal justice. §3553(a) further directs the District Court to consider "(1) the nature and circumstances of the offense and the history of the characteristics of the Defendant; (2) the need for the sentence imposed; (3) and (4) the kinds of sentences available and the Sentencing Guidelines range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentencing disparities among Defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

1. **Nature and Circumstances of the Offense and the History and Characteristics of William M. Jones, IV**

   a. **Nature and circumstances of the offense**

Possessing child pornography is a serious offense to which there are, unfortunately, many victims who are children. William M .Jones, IV, through many years of therapy, now understands that possessing child pornography is not a victimless crime, but that many children are harmed by contributing to a market for this type of abuse.

As stated previously, Mr. Jones was sexually abused as a very young child by his first stepfather by forcing Mr. Jones to watch pornography and engage in sexual acts with his twelve (12) year old stepsister. This has caused Mr. Jones to develop unhealthy and very inappropriate sexual thoughts and urges throughout his life, that he, unfortunately, acted upon through the sexual abuse of his stepdaughter seventeen (17) years ago as well as possessing child pornography in 2017.

To Mr. Jones's credit, he has sought help for these problems and voluntarily enrolled in sex offender's therapy for many years. Like alcohol or drug addiction, individuals can have relapses and set backs on their road to recovery and that is what happened to Mr. Jones regarding this crime of Possession of Child Pornography. However, with the help of his continued therapy, his wife and his family, Mr. Jones continued to battle his demons and urges to a point where he is finally at peace and no longer feels the need to engage in any type of deviant behavior at this time. Mr. Jones is continuing with his therapy to this day which has been successful despite his setbacks. Mr. Jones is extremely remorseful and sorry for his past conduct and has accepted full responsibility and accountability for his crimes.

b.  <u>**History and characteristics of William M. Jones, IV**</u>

i.       <u>**Background of Defendant**</u>

William M. Jones, IV, born November 18, 1968, is one (1) of two (2) children born to the marriage of William M. Jones, III, who is deceased, and Carol Ridle, age seventy-three (73). Mr. Jones was born in Fort Worth, Texas, where his father was at the time serving in the United States Air Force. Mr. Jones's father was mainly absent from his childhood due to the fact that his father was in the military and that his parents divorced when he was six (6) years old. After his parents' divorce and their relocation to Florida, Mr. Jones's mother married Bob Rafilli when Mr. Jones was nine (9) years old. Mr. Rafilli was an alcoholic and sexually abused Mr. Jones and his twelve (12) year old daughter by forcing them to both watch pornography and engage in sexual acts together. This abuse was never disclosed to Mr. Jones's mother and it obviously had a significant impact on Mr. Jones for the rest of his life. Mr. Jones's mother remarried once again to a Richard Miller when Mr. Jones was twelve (12) years old. Mr. Jones never developed a good relationship with Mr. Miller and his mother divorced again when Mr. Jones was seventeen (17) years old. As a result, Mr. Jones never had a good male role model throughout his childhood.

In 1990, at the age of twenty-two (22), Mr. Jones married Wendy Jones, and they had two (2) children together, Amber Nunnelly, age twenty-eight (28), and William M. Jones, V, age twenty-seven (27). Mr. Jones separated from Wendy after two (2) years of marriage, subsequently divorced and relocated to the state of Indiana. At that time, Mr. Jones began a relationship with Laney Hughes and had they had a child together, Christopher Jones. Laney Hughes had a fourteen (14) year old daughter who Mr. Jones sexually touched and fondled in 2003 which led to his conviction of child molestation and serving eight (8) years of incarceration at an Indiana State Correction Facility.

During his incarceration, Mr. Jones voluntarily entered into sex offender therapy and continued with therapy after his release from prison. Mr. Jones enrolled into the C.A.R.T. program at Parkside Psychological Associates in Meadville, Pennsylvania. Through his therapy, Mr. Jones realized that it can take years to reach a level where a person can stop deviant thoughts. Mr. Jones began struggling with his demons and succumbed to his deviant thoughts and relapsed by possessing child pornography in 2017. However, Mr. Jones recognized that he can change his thought patterns and has been successful in his continued therapy by eliminating deviant thoughts since that unfortunate relapse in 2017.

### ii. Family responsibilities, charitable actions and an ambitious and hardworking character throughout his life

In 2010, Mr. Jones married Ching Mei who is from Taiwan. Mr. Jones has provided for his wife since that time and Ching Mei has supported Mr. Jones throughout his therapy and during the trying times when Mr. Jones relapsed and possessed child pornography. She has helped Mr. Jones regain control over his life again and, finally at this time, break his thought cycle to prevent devious thoughts and behaviors. Ching Mei has written a statement to the Court which is attached to this Memorandum as Exhibit "A" which outlines her insights into Mr. Jones's life, the crimes he committed as well as his ongoing therapy and her support of Mr. Jones throughout this ordeal.

Mr. Jones's mother, Carol Ridle, is seventy-three (73) years old and is totally disabled. Mr. Jones helps his mother, both financially and by helping to maintain her property in Meadville. Ms. Ridle also authored a statement to the Court which is attached to this Memorandum as Exhibit "B".

In addition to family responsibilities, charitable good works are to be considered as reflecting on Mr. Jones's character under §3553(a) factors. U.S. v. Tomko, 362 F 3rd 558 (3rd Cir. 2009) (en banc). Good works, in combination with other factors, may also be considered for a variance under 18 U.S.C. §3553(a). U.S. v. Tomko, supra. In a pre-Booker/pre-Gall decision, the 3rd Circuit

affirmed the downward departure taken by a District Court for extraordinary charitable works in significant part because the charitable giving involved participation by the Defendant in charitable activities, as opposed to simply monetary contributions. U.S. v. Serafini, 233 F 3rd 758, 776 (3rd Cir. 2000).   Furthermore, post-Gall, charitable activities need not be outside the heartland or "extraordinary" to support a variance. See Gall, supra; U.S. v. Ali, 508 F 3rd 136, 153 fn. 23 (3rd Cir. 2007) (heartland analysis does not apply to a variance as it does to a downward departure); see also U.S. v. Pitts, 261 Fed. Appx. 377, 379 (3rd Cir. 2008).  Mr. Jones has donated his time to charities over his lifetime.  Mr. Jones regularly gives blood to the American Red Cross, has been active in caring for neglected animals, has donated his time to help with numerous projects backed by the United Way of Western Crawford County by building wheelchair ramps and other miscellaneous construction needs to those who cannot afford it.

        In addition to being a loving and caring husband and son and donating his time to charities, Mr. Jones has also been an extremely ambitious throughout his entire life.  After obtaining his high school diploma in 2003 as a result of only completing high school through the eleventh (11th) grade, Mr. Jones worked extremely hard to better himself and provide for himself and his family.  After working as a truck driver for ten (10) years and other minimum wage jobs, Mr. Jones went back to school to obtain an Associate's Degree in manufacturing and engineering technology, as well as a degree in industrial engineering administration from Edinboro University in 2016.  As a result, Mr. Jones obtained employment at Accutech Precision Aerospace as a team leader/machinist.  In 2018, Mr. Jones obtained his Master's Degree in manufacturing management from Penn State University in State College, Pennsylvania, and thereafter, became employed by Augustine Dye and Mold as an operations manager.  Attached to the Defendant's Memorandum as Exhibit "C" are pictures of Mr. Jones evidencing his charitable contributions, higher education to better himself, and other meaningful contributions to society throughout his life.

In addition to increasing his earning potential, Mr. Jones also purchased three (3) rental properties in Oil City which he personally had maintained on a regular basis to supplement his income for him and his wife.  The Defense submits that William Jones's family responsibilities, charitable actions and hard-working and ambitious character are extraordinary and, as such, sufficient to justify a variance down from the recommended Guideline range in this case.

### iii.    Post-Offense rehabilitation and remorse

Mr. Jones is very remorseful for his actions in possessing child pornography.  Through years of therapy, he realizes that possessing child pornography is not a victimless crime, but involves many children who are sexually abused as a result of participating in a market for these images and videos.  Mr. Jones regrets his actions, but accepts responsibility for the same.  As evidence of this, Mr. Jones was not only willing to plead guilty, but did cooperate with the U.S. Attorney's Office in providing as much information as possible regarding the websites he used to download the child pornography.  By agreeing to plead guilty, Mr. Jones has spared the government the cost of trial. Additionally, Mr. Jones has continued with sex offender therapy after his arrest and letters of reference and certificates of completion of these programs are attached to this Memorandum as Exhibit "D".

### iv.    Defendant's statement of case

Defendants have a right to allocution prior to the pronouncement of the sentence which is a right guaranteed by due process.  United States v. Fisher, 502 F 3rd 293, 297-298 (3rd Cir. 2007); United States v. Plotts, 359 F 3rd 247, 249 (3rd Cir. 2004).  This is a very important right in the light of the emphasis in United States v. Booker, 543 U.S. 220, 125 S Ct. 738, 160 L Ed. 2nd 621 (2005) and Gall v. United States, 552 U.S. 38, 128 S Ct. 586 (2007) on individualized sentencing.  As part of his allocution, Mr. Jones has prepared a personal letter to the Court (see Exhibit "E").  The purpose of this letter is to accept responsibility and accountability and to express remorse for his actions.

Mr. Jones provides insight into his personal background and the process of overcoming his personal demons to become a better person through sex offender therapy, as well as his involvement in his community. A defendant's remorse and acceptance of responsibility are the first important steps to returning to be a more productive person in society upon his release from incarceration.

### 2.   The Requested Sentence Meets the Needs of Sentencing

The sentence imposed by this Court should reflect the seriousness of the crime, afford adequate deterrents to criminal conduct, protect the public from further crimes of the Defendant and provide any educational or vocational training, medical care or other correctional treatment. See 18 U.S.C. §3553(a)(2). All of these needs are met with the mandatory sentence of incarceration of ten (10) years (120 months) pursuant to 18 U.S.C. §2252(a)(4)(B) and §2252(b)(2).

The Court is to consider the Sentencing Guidelines as a starting point in fashioning an appropriate sentence, which in Mr. Jones's case is one hundred and thirty-five (135) months to one hundred and sixty-eight (168) months of incarceration. However, this Court has the discretion to sentence outside the applicable Guideline range and only impose the ten (10) year minimum sentence of incarceration. Mr. Jones accepts responsibility for committing these crimes and understands the seriousness of his actions and, therefore, requests that this Honorable Court consider all the information presented in this Memorandum, the attached letters and documents in imposing the ten (10) year minimum sentence of incarceration in this case which would advance all of the goals as set forth in 18 U.S.C. §3553(a)(2).

### 3, 4 and 5.   The Kinds of Sentences Available, The Guideline Range and Policy Statements

The Guidelines are only one of the factors to consider when imposing a sentence and §3553(a)(3) directs the Judge to consider all kinds of sentences which are available. A downward departure is a creature of the Guidelines and is a separate concept from the application of the §3553

factors and a variance from the Guideline Sentence is permitted by the application of such factors. A Sentencing Court may depart from the Guidelines if justified by the overall nature of relevant circumstances or factors, even where particular facts in isolation may not warrant such departure. United States v. Evans, 49 F 3rd 109, 114 (3rd Cir. 1995); see also U.S.S.G. §5K 2.0, cnt.   The Sentencing Judge has such discretion in all cases because his first-hand knowledge of a particular case provides unique insight into the intricacies of the case that no blanket Guideline provision could address.  Kimbrough, 552 U.S. at 108.

Mr. Jones is requesting to serve only the mandatory ten (10) year (120 months) sentence of incarceration pursuant to pleading guilty to the charge of Possession of Child Pornography pursuant to §2252(a)(4)(B) and §2252(b)(2) as a result of his previous child molestation conviction in the State of Indiana.  Therefore, Mr. Jones is not eligible for any type of probation or sentence less than ten (10) years or one hundred and twenty (120) months.  The defense believes that the ten (10) year mandatory minimum sentence of incarceration is a sentence sufficient to accomplish the principals of sentencing.  Based upon the discussions as set forth in this Memorandum, it is averred that a sentence greater than ten (10) years or one hundred and twenty (120) months is not needed to impose a very reasonable sentence in this case.

6. **The Need to Avoid Unwarranted Sentencing Disparity**

While the need to avoid unwarranted disparity in sentencing does not necessarily require the Court to create parody among defendants, 18 U.S.C. §3553(a)(6) does not prohibit the Court from doing so.  See U.S. v. Dowdy, 216 Fed. Appx. 178, 180-181 (3rd Cir. 2007); see also U.S. v. Parker, 462 F 3rd 273, 277 (3rd Cir. 2006).  Consideration of sentences of others charged with similar crimes "is certainly within the Court's broad discretion in imposing a sentence within a statutory range".  Dowdy, 216 Fed. Appx. at 181 (citing Parker, 462 F 3rd at 277 (quoting U.S. v. Booker, 543 U.S. 220, 233 (2006))).

As previously mentioned, Mr. Jones must serve a mandatory ten (10) year (120 months) sentence of incarceration and the Guideline range for the charge of Possession of Child Pornography is one hundred and thirty-five (135) months to one hundred and sixty-eight (168) months. Therefore, the mandatory minimum sentence of incarceration to be served by Mr. Jones is fifteen (15) months less than the sentence within the Guideline range which is not a significant disparity among other defendants with similar records which have been found guilty of similar conduct.

     **7.**     <u>**The Need to Provide Restitution to Victims of the Offense**</u>

Pursuant to 18 U.S.C. §2259(c)(3), a child pornography trafficking offense requires mandatory restitution as set forth in 18 U.S.C. §2259(b)(2). The Court shall determine the full amount of the victim's losses and shall order restitution in an amount that reflects the Defendant's relative role in the causation process that underlines the victim's losses which is no less than three thousand dollars ($3,000.00). Although Mr. Jones is willing to pay any type of restitution in this case, the U.S. Attorney's Office has not provided any Victim Impact Statements or request for restitution by victims so the defense avers that this factor is not applicable to this particular case.

## CONCLUSION

William M. Jones, IV's possession of child pornography is a serious crime that he has taken responsibility and understands that this crime involves victims who are children to which he is extremely remorseful.  However, Mr. Jones has continued to engage in sex offender therapy and no longer has the deviant thoughts or desires that led to his crimes.  Mr. Jones has led an otherwise very productive life in which he has given of himself through many charitable activities.  Mr. Jones is fifty-one (51) years of age in will be sixty-one (61) years of age after serving his mandatory minimum sentence of incarceration of ten (10) years and, therefore, Mr. Jones respectfully requests that this Honorable Court grant him a downward variance from the Guideline sentence recommendation of hundred and thirty-five (135) months to one hundred and sixty-eight (168) months to serve only the ten (10) year minimum sentence of incarceration so he can spend the remaining years of his life becoming once again a productive member of the workforce, providing for his wife and family and continuing to volunteer his time and efforts to charitable causes.   Mr. Jones also respectfully requests that his sentence relating to Count 3, Possession of a Firearm of a Felon, run concurrent to his sentence of Count 2.

Respectfully submitted,

/s/ Terry L. Graffius, Esquire
Terry L. Graffius
PA I.D. #75999
Leventry, Haschak & Rodkey, LLC
1397 Eisenhower Blvd.
Richland Square III, Suite 202
Johnstown, PA  15904
(814) 266-2799
tgraffius@lhrklaw.com